Patrick E. ATCHLEY *v.* STATE of Arkansas

CA CR 99-351                                          2 S.W.3d 86

Court of Appeals of Arkansas
Division II
Opinion delivered October 20, 1999

*Laws & Murdoch, P.A.*, by: *Hugh Richardson Laws*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. The State charged appellant Patrick E. Atchley with the crime of engaging children in sexually explicit conduct for use in visual or print medium. *See* Ark. Code Ann. § 5-27-303 (Repl. 1997). At trial, the court declared a mistrial at the request of the appellant. After the case was set for retrial, the State amended the information to add two additional charges, pandering or possessing visual or print medium depicting sexually explicit conduct involving a child, *see* Ark. Code Ann. § 5-27-304 (Repl. 1997), and second-degree endangering the welfare of a minor, *see* Ark. Code Ann. § 5-27-204 (Repl. 1997). The appellant moved to dismiss the charges against him, alleging that because the State had goaded him into moving for a mistrial at his first trial, application of the Double Jeopardy Clause precludes retrial. The trial court denied his motion. He raises this argument again on appeal and further argues that we should apply a stricter standard to such cases than the standard applied in *Oregon v. Kennedy*, 456 U.S. 667 (1982). We affirm.

Prior to trial, the appellant sought to preclude the State from introducing testimony that he furnished alcohol to a minor. At a pretrial hearing, the appellant's counsel stated that the State had agreed not to introduce this testimony. The prosecutor stated:

> Your Honor, the photographs depict the girls with alcohol bottles.... Statements also say that they went to his house and they consumed alcohol. Now, I believe there's also gonna be some testimony that he didn't give it to them. Whether he did or not, I'm not intending to go into that, technically. If it's opened, I'm gonna go into it, but whether he furnished alcohol or not, I don't care.

The prosecutor further stated that the photographs showed the minors with alcohol bottles, and he argued that those photographs were admissible. The court then agreed with the prosecutor that certain photographs showing the minors with alcohol were admissible.

However, at a subsequent hearing the court reconsidered its ruling regarding the admissibility of the photographs. The court

stated that if the appellant was endangering the welfare of a minor or providing alcohol to a minor, then he should have been charged with those offenses. The prosecutor explained that although the appellant had provided alcohol to the girls, he did not intend "to go into the alcohol realm in my case in chief, but that was based on the photographs coming in." The trial court noted the earlier stipulation and excluded the photographs showing the minors with alcohol. The prosecutor remarked:

> Then if that's the case... I will back up. I hate to do that but that's an element... of the charge. And that's an element. It's in all the statements. But... I wasn't intending to go into testimony just to introduce photographs and let them speak for themselves which is exactly what I said on the record. But, without the photographs, I've got to back up and say we do intend to use it because they said that. And, I said that on the record. That was — that we's gonna let the photographs speak for themselves. Without the photograph, we have no testimony.

The prosecutor further remarked:

> I don't care about whether they say he drank alcohol or not, [b]ut, the fact is he's providing these items for the pictures. You know I don't care if they consumed it. I don't care what they say about drinking it. But, the essence of the charge is that he enticed, he provided. These are all things that he gave them that was part of the picture that he's back behind the camera directing them.

The trial court stated that the State had specifically agreed that it did not intend to offer any evidence that the appellant provided alcohol and that if there was "no testimony being offered to that effect, then the pictures shouldn't be offered and create an implication that he did this." The court, however, further stated, "I'm granting the [m]otion in [l]imine at this point, unless the State through testimony, can offer testimony to somehow tie it — lay the foundation for those photographs to show that they are relevant to the charges we're talking about."

At trial, the State called N.T., who was seventeen, as a witness. N.T., who was in some of the pictures, replied affirmatively when asked by the State if the appellant had supplied any props, toys, or other items to use in the photographs. The State then handed N.T. photographs showing the minors with alcohol. The trial court remarked that the pictures would not be shown until the State laid a

foundation to show that the items were used to induce, encourage, or entice and further asked the State not to refer to what was in the pictures. The State then cautioned N.T., "Now, during this time, did Pat give you — I don't want to get what it was, but were you given anything to use in the photographs — props, anything to hold, to show up, or whatever? Just say yes or no." N.T. examined the photographs and responded affirmatively. The State asked if the items were given to her so that they could be used in the photographs. N.T. denied this, and the State asked why they were given. N.T. replied, "We already had the liquor and Megan wanted to see the gun- ." Without prompting from the appellant, the court held a sidebar conference and cautioned the State to stay away from the photographs.

The State then called M.C., who was also seventeen, as a witness. The prosecutor asked, "Did he provide you — did he ever buy you anything or provide you with anything?" M.C. responded, "Yeah, we'd go to his house — we'd get drunk and stuff and he gave us money. We bought pot and he took us places--." The court held a bench conference, and the appellant's counsel remarked, "This is what we moved in [l]imine about he — wasn't charged with any-thing contributing—." The prosecutor, however, stated that he "didn't expect that," but that he would "get her away from that." The prosecutor noted, "I asked her if he provided anything — I expected and she'd say, you know, he's bought clothes and stuff like that." The appellant's counsel moved for a mistrial. The prosecutor replied that "the actual court ruling was that if we could lay a foundation the alcohol could come in. And, the only way to lay a foundation is for something to come out. I didn't expect it to come out then." The court noted that the State had stipulated that it did not intend to introduce testimony regarding the appellant providing alcohol to minors and that the court had said it would reconsider its ruling regarding the admissibility of the photographs if the State laid a foundation. The court further stated as follows:

> [T]he State made a stipulation. It was an agreement. That's an agreement between counsel before I ever got involved that they had no intention of going into the subject of him providing alco-hol to these minors. .... That was an agreement. There's no ques-tion about that, before we ever got the pictures. When I got the pictures, and I saw an alcohol bottle in their hands — fully clothed children — young people, with an alcohol bottle, I based my

ruling on those pictures in part on the stipulation. Since the State had stipulated that they were not gonna put alcohol and him providing alcohol into the case, I didn't see any fairness in allowing a picture of a fully clothed young person with an alcohol bottle in their hand, into — into this case involving these charges. For the very reason, that this — I didn't want the jury to conclude that he was somehow involved with providing alcohol, if the State was not gonna prove that.

So, you're kind of getting ahead of yourself a little bit on proving something. I realize you would like to put the picture with a child — with a young person with an alcohol bottle in their hand, and let the jury conclude from that. That he was somehow involved in that. But, that is in direct violation of your stipulation that you made earlier, before we got to the pictures. That you did not intend to impose alcohol into this case, and him providing it. So, for that reason, the [m]otion in [l]imine was granted on that — on a stipulation. The subject — the State will stay away from the subject that him providing alcohol to these minors. That's based on your own agreement.....

We're gonna try this case on the merits of the charge that the State brought, and the pictures that deal with the subject. I don't know how many there are. There's about [eleven] pictures of nude or partially clothed, sixteen[-]year-old girls, apparently that the State has access to that are relative to this charge. The State — those cases — those pictures that involve the gun, with their clothes, those pictures that involve alcohol bottles with their clothes, as far as I'm concerned, based on the State's stipulation, uh, have no relevance involved in this case. That's my ruling and that's what I said earlier.

The trial court, however, did recall that it had told the State that it could lay a foundation on the picture to show how it was involved in the case. The prosecutor replied that the witness "got ahead of me," and apologized, stating that he "wouldn't have got to that point if I hadn't been understanding I could lay a foundation."

An in camera hearing was then held with M.C. M.C. was shown the photographs. She then testified that the appellant had provided her and other minors with alcohol. Afterwards, the court stated that it would hold the State to its stipulation. The court, however, denied the appellant's motion for a mistrial. The prosecutor reported that the witness was being instructed to "stay away" from the subject. The prosecutor further stated, "I'm not gonna get

back into that. I understand. I just was under the understanding I could lay a foundation. No problems. Don't worry about it."

When the jury returned to the courtroom, the court instructed it "to disregard the witness'[s] last statement." The State asked M.C., "Now, these — during this time frame that the photographs were taken, what was going on — what were y'all doing?" M.C. replied, "Drinking." The appellant again moved for a mistrial. The court asked, "I thought you instructed your witness to stay away." The prosecutor replied, "We did. We did tell her that. We told her to stay away from that." The court granted the appellant's motion.

The appellant subsequently filed a motion seeking to dismiss the case, arguing that the State had goaded him into moving for a mistrial and that a retrial was thus precluded by application of the Double Jeopardy Clause. The court held a hearing on this motion. The appellant's counsel noted that the State had filed additional charges. The prosecutor stated that he filed additional charges against the appellant because the appellant had driven around the victim's house five times on the day after the mistrial was granted, and he felt that additional charges needed to be filed. The prosecutor further stated that he filed additional charges so his witnesses would not have to "separate the facts."

After restating what happened at trial, the court stated as follows:

> I don't think this was intentional. I think that what created the confusion, I think the State was wanting to get those photographs in. I mean, they wanted to get the photographs in. My ruling was that in light of what I was seeing, the charges and the motion in limine involving the alcohol and what he was charged with, that I didn't see the picture of the gun — with the gun and the picture of the bottle of alcohol, I thought would create more prejudice than probative value on the case. And, so, I ruled that it was out. And the State was anxious to get the pictures in.
>
> I do remember, I'm assuming we were on the record. I don't remember. But I do remember talking to counsel outside the hearing of the jury and saying that if the State can lay a foundation and show that they're somehow relevant to this case, I'll reconsider. I believe... that's what I said.....

And, then the State, I think, put the pictures back up there with the witness, and I think in part that created some of the problem, because the witnesses were then trying to deal with that and they were having a difficult time staying away from alcohol with that picture there. But, again, I go back — we can't get around the original first thing that happened, the pretrial stipulation to stay away from that subject. It wasn't something I ordered, it was something that was agreed to.

But, my find[ing] is it was not intentional. I think it's just one of those things that come up in a trial. Confusion, whatever else. I don't think it was prosecutorial misconduct. I think it was just confusion. I granted the mistrial. I think by the time I granted it I certainly got the impression everyone agreed that in light of what was happening there was no way we could proceed. I don't know if the record reflects that, but [d]efense moved for a mistrial and the State was that we have done our best to talk to these witnesses. They just can't seem to stay away from it.

The trial court denied the appellant's motion to dismiss.

■ The United States Supreme Court stated in *Oregon v. Kennedy*, 456 U.S. 667 (1982), that there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial if the defendant moves for and is granted a mistrial. *Id.* at 673. The Court held that "the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Id.* at 679. In other words, "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first trial on his own motion." *Id.* at 676. This standard requires that the trial court make a "finding of fact" and "[i]nfer[ ] the existence or nonexistence of intent from objective facts and circumstances...." *Id.* at 675. In *Jackson v. State*, 322 Ark. 710, 713, 911 S.W.2d 578, 580 (1995), and *Espinsoa v. State*, 317 Ark. 198, 876 S.W.2d 569 (1994), the Arkansas Supreme Court adopted the standard set forth in *Kennedy*. Thus, we decline the appellant's invitation to apply a stricter standard.

■ As is apparent from the above-quoted excerpts from the record, the prosecutor was confused by the court's rulings, conclud-

ing that he could lay a foundation for the photographs depicting the minors with alcohol while at the same time abiding by the stipulation not to introduce testimony that the appellant provided alcohol to minors. And despite the prosecutor's attempts to prevent the State's witnesses from testifying about alcohol, the witnesses continued to do so. Moreover, the trial court accepted the prosecutor's assertion that he had not intended to cause the mistrial. Thus, we cannot say that the record does not support the trial court's finding that the State did not goad the appellant into asking for a mistrial.

Affirmed.

CRABTREE and MEADS, JJ., agree.